PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA SANCHEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA GALIL USA, INC., a Delaware corporation, d/b/a WWW.7FORALLMANKIND.COM,<br><br>Defendant. | Case No.   3:25-cv-01963-AJB-AHG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR: (1) VIOLATION OF CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*; AND (2) CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE § 1750 *ET SEQ.*** |

FIRST AMENDED CLASS ACTION COMPLAINT                                   No. 3:25-cv-01963-AJB-AHG

## I.    NATURE OF ACTION

1.      Defendant advertises fictitious regular prices (and corresponding phantom discounts) on products sold through its website at https://www.7forallmankind.com (the "Website"). This practice allows Defendant to fabricate a fake "reference price," and present the actual price as "discounted," when it is not.  The result is a sham price disparity that is *per se* illegal under California law.

## II.    PARTIES

2.      Plaintiff is a citizen of California and *a resident of the County of San Diego* who purchased a product identified below from Defendant's Website *while located in the County of San Diego*.

3.      Defendant is a Delaware corporation whose principal place of business is located in the state of New Jersey.  Defendant's Statement of Information, Corporation, filed on February 12, 2025 with the Office of the Secretary of State for the State of California states that its principal office is located at 1 Harmon Plaza, 5th Floor, Secaucus, NJ 07094.  Defendant is an online retailer that sells apparel products and related accessories nationwide and in California.  Defendant has substantial contacts with and receives substantial benefits and income from and through the state of California.

## III.    JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one class member and Defendant are citizens of different states.

6.      Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

Constitution of this state or the United States." Defendant engaged in intentional acts by operating its Website and making it available to California residents, deceptively advertising its products via its Website to California residents including Plaintiff, expressly aiming its conduct toward California residents by conducting substantial business with residents of the State of California via its Website, and causing economic harm to California residents that Defendant knew would be likely to be suffered in California. Plaintiff is informed and believes and thereon alleges that Defendant generates a minimum of eight percent of its revenues from its Website based upon interactions with Californians, such that the Website "is the equivalent of a physical store in California." *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020), *review denied*, No. S264780 (Dec. 9, 2020). Plaintiff is informed and believes and thereon alleges that Defendant sells products to Plaintiff and other California residents as part of its regular course of business. Plaintiff is informed and believes and thereon alleges that Defendant sells thousands of products to California residents each year. Plaintiff is informed and believes and thereon alleges that Defendant exercises at least some level of control over the ultimate distribution of its products sold via its Website to the end consumer including products shipped into California.

7. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

8. Defendant, through its Website, offers products for sale to California consumers.

9. Defendant advertises fictitious prices (and corresponding phantom discounts) on such products. This practice allows Defendant to fabricate a fake "reference" price, and present the actual price as "discounted," when it is not.

10. On June 25, 2025, Plaintiff purchased a women's pants product named "High Waist Slim Kick in Coated Black" (the "Product") from Defendant's Website for the allegedly discounted price of $186.00, which Defendant compared to a strike-through

FIRST AMENDED CLASS ACTION COMPLAINT    No. 3:25-cv-01963-AJB-AHG

reference price of $248.00, after visiting the webpage depicted in relevant part in the screenshot shown below:



11.    Courts have construed strikethrough prices as representing former prices despite the lack of specific words indicating the regular price. *See, e.g.*, *Jacobs v. La-Z-Boy, Inc.*, 2024 WL 5194976, at *5 (C.D. Cal. Nov. 14, 2024) (Staton, J.); *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 725 (N.D. Cal. 2024); *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *4 (N.D. Cal. 2024) (Lin, J.); *Munning v. Gap, Inc.*, 2016 WL 6393550, at *5 (N.D. Cal. Oct. 28, 2016); *see also Calcagno v. Kipling Apparel Corp.*, 2024 WL 3261205, at *7 (S.D. Cal. July 1, 2024) (Bashant, J.) ("a former price need not be identified by the words 'formerly' or 'regularly' to be actionable").

12.     At the time of Plaintiff's purchase via the Website, Plaintiff did not see any disclaimer or notice on the Website explaining that the strike-through reference price that Plaintiff saw was anything other than the former price or regular price at which Defendant itself sold such Product to consumers.  Any such disclaimer or notice, if any existed at such time (which is disputed), was not reasonably conspicuous to the reasonable prudent Internet user.

13.     The alleged former price or reference price described in the preceding paragraph was not the price at which Defendant ordinarily sells the Product.  Put differently, Defendant does not ordinarily sell its products including, but not limited to, the Product at the advertised regular prices.

14.     In particular, Defendant was offering the exact same Product on the Website for an allegedly discounted price of $186.00 with the same phantom discount from a strike-through reference price of $248.00 on January 29, 2023, January 30, 2023, March 8, 2023, March 17, 2023, April 22, 2023, May 20, 2023, October 1, 2023, October 3, 2023, October 22, 2023, November 19, 2023, November 29, 2023, December 7, 2023, March 5, 2024, April 23, 2024, May 10, 2024, May 23, 2024, July 14, 2024, July 19, 2024, July 23, 2024, August 14, 2024, September 4, 2024, October 10, 2024, November 6, 2024, November 26, 2024, December 17, 2024, December 24, 2024, January 15, 2025, February 19, 2025, and June 24, 2025, which has been documented by the screen captures of the Internet Archive's Wayback Machine on those dates.[1]  Plaintiff, by and through her counsel, discovered such historical pricing information preceding Plaintiff's purchase subsequent to Plaintiff's purchase of the Product.

---

[1] The "Wayback Machine" is a digital archive of the World Wide Web that allows users to view past versions of websites.  https://web.archive.org/ (last visited Sept. 24, 2025).  It automatically captures snapshots of webpages at various points in time, and stores them with timestamps.  It is used to determine how a website looked in the past, analyze the evolution of a website, and retrieve information that may no longer be available on the current iteration of a website.  Information retrieved via the Wayback Machine is generally treated as authoritative.  "In this district, the contents of web pages available through the Wayback machine are generally proper subjects of judicial notice 'as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]'"  *Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *3 n.7 (C.D. Cal. Mar. 28, 2024) (Gee, J.) (citations omitted).

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

15.    Defendant was similarly offering the Product for an allegedly discounted price of $136.00 with a phantom discount from a strike-through reference price of $248.00 on November 4, 2024, as documented by the screen capture of the Wayback Machine on such date.

16.    According to the website of Klarna.com, which has previously tracked the price history of the Product on the Website, the Website advertised the Product for sale at $218.00 between June 5, 2022 and October 6, 2022.  Plaintiff, by and through her counsel, discovered such historical pricing information subsequent to Plaintiff's purchase of the Product.

17.    Even subsequent to Plaintiff's purchase of the Product, Defendant has been offering the exact same Product on the Website for a discounted price of $186.00 with the same phantom discount from a strike-through reference price of $248.00 on July 8, 2025, July 20, 2025, July 21, 2025, August 31, 2025, September 20, 2025, September 22, 2025, September 23, 2025, September 24, 2025, and September 26, 2025.[2]

18.    In addition, the alleged former price or reference price described in the preceding paragraph was not the "prevailing market price" in the three month period preceding the above access date within the meaning of section 17501 of the California Business and Professions Code.  Likewise, the advertisement does not "clearly, exactly and conspicuously" state the date upon which the alleged former price or reference price was the prevailing market price within the meaning of that same statute.

19.    Within such three month period immediately preceding Plaintiff's purchase of the Product (*i.e.*, March 2025-May 2025), Defendant was offering the exact same

---

[2] Evidence of Defendant's pricing obtained via an investigation conducted ***subsequent*** to Plaintiff's purchase is recognized as appropriate in similar reference pricing cases as was the case in *Real v. Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) (Bernal, J.), in which the "Plaintiffs' investigation took place ***a year after Plaintiff Real's purchase***." *Id.* at *5 (emphasis added); *id.* ("***This Court declines to find that an investigation must take place prior to or concurrently with a plaintiff's purchase to plead a sufficient claim***.") (emphasis added); *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *9 (C.D. Cal. May 24, 2023) (Wu, J.) (tentative ruling) ("Evidence that the same sale price was offered on multiple occasions ***at later dates*** supports those theories.") (emphasis added), *adopted in*, No. 2:22-cv-05896-GW-AS, Doc. 53 (C.D. Cal. May 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT                     No. 3:25-cv-01963-AJB-AHG

Product on the Website for an allegedly discounted price of $186.00 with the same phantom discount from a strike-through reference price of $248.00 on May 23, 2025 and May 25, 2025, all of which has been documented by the screen captures of the Internet Archive's Wayback Machine on those dates. Plaintiff, by and through her counsel, discovered such historical pricing information on the Wayback Machine subsequent to Plaintiff's purchase of the Product.

20. Plaintiff's investigation also shows that other online retailers have advertised prices for the Product well below the $248.00 reference price consistently relied upon by Defendant's advertising of the Product.

21. For example, according to the website of Klarna.com, the price history of the Product on the website of Bloomingdale's at: bloomingdale.com was $218.00 during March 1, 2025-May 31, 2025, *i.e.*, the equivalent of ***100 percent*** during such three-month timeframe.

22. According to the website of Klarna.com, the price history of the Product on the website of Nordstrom at: nordstrom.com was $163.50 during March 1, 2025-May 31, 2025, *i.e.*, the equivalent of ***100 percent*** during such three-month timeframe.

23. These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant on sale and at a substantial and deep discount. The reference price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

24. "An advertised discount off a seller's regular price can be deceptive where (1) the alleged sale price does not in fact differ from the regular price at which the product is ordinarily sold; or (2) 'the alleged original price constituted a false valuation of the product.'" *Knapp v. Art.com, Inc.*, No. 16-cv-00768-WHO, 2016 WL 3268995, at *3 (N.D. Cal. June 15, 2016) (quoting 1A Calmann on Unfair Competition, Tr. & Mono. § 5:59 (4th ed. 2015) and citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1102 (9th Cir. 2013) (noting that the plaintiff alleged both (1) "that he purchased several items that were

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

advertised as being substantially reduced from their 'original' or 'regular' prices but that were, in reality, routinely sold by [the defendant] at the advertised 'sale' prices," and (2) "that the advertised 'original' or 'regular' prices did not reflect prevailing retail market prices"); 16 C.F.R. § 233.1(a) (an advertised "reduction from the advertiser's own former price for an article" is legitimate where "the former price is the *actual, bona fide price* at which the article was offered to the public on a regular basis for a reasonably substantial period of time") (emphasis added by *Knapp*)).

25.   *Knapp* recognized a "theory of liability" "that" the defendant "does not ordinarily sell its products at the advertised regular prices (in violation of section 17500)". *Knapp*, 2016 WL 3268995, at *4; *Calcagno v. Kipling Apparel Corp.*, 2024 WL 3261205, at *7 (S.D. Cal. July 1, 2024) ("[Section 17500] is more general [than section 17501] and applicable to any false or misleading statements.").

26.   Defendant's perpetual sales of the Product (and other products) have caused its purported sales prices to be no different from the prices at which it regularly sells the Product (and other products).  That is, Defendant does not ordinarily sell its Product (or other products) at the advertised regular prices in violation of section 17500 of California's Business and Professions Code.

27.   In addition, Plaintiff is informed and believes and thereon alleges that the advertised regular prices on Defendant's Website are out of step with prevailing market prices in violation of section 17501 of California's Business and Professions Code.  In light of the foregoing investigation of: (i) the Product's sales price on Defendant's Website conducted by Plaintiff's counsel regarding the three-month period before Plaintiff's purchase of the Product referenced in the preceding paragraphs; (ii) the time period before such pertinent three-month period began; and (iii) the time period after Plaintiff's purchase of the Product, Plaintiff is informed and believes and thereon alleges that the Product purchased by Plaintiff was not offered for sale on Defendant's Website in the majority of daily offerings at the reference price during the requisite statutory three-month period, such that the reference price was not the "prevailing market price" for the

Product during the requisite statutory three-month period. *People v. Superior Court*, 34 Cal. App. 5th 376, 414 (2019) ("[T]he requisite market price is reasonably viewed as the ***common or predominant price*** during that [pertinent three-month] period. For that reason, in a typical case, a retailer may avoid liability under the statute by advertising a former price that obtains on ***all or most of the days*** within the pertinent three-month period.") (emphasis added); (recognizing the "statistical 'mode' price of an advertised item − that is, the most commonly occurring price − as an objective standard for determining the prevailing three-month market price for that item and explaining that "the most straightforward application of the concept of the mode to the facts alleged here is to identify the three-month prevailing price for an item as ***the price offered in the majority of the 'daily offerings' for the period, if there is one, and otherwise as the most frequently occurring price in those offerings***") (emphasis added).

28.     Defendant knows that the prices for the Product are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its Website to increase sales and profits by misleading consumers to believe that they are buying products at a substantial discount. Defendant thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

29.     Defendant used strike-through pricing for the Product and other products to indicate that such products were on "sale," which provided a false sense of urgency to consumers including Plaintiff because, in reality, the sale price that was advertised to Plaintiff and other consumers was routinely offered. 16 C.F.R. § 233.5 ("[Retailers] should not … make a 'limited' offer which, in fact, is not limited.").

30.     The effectiveness of Defendant's deceitful pricing scheme is supported by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances

subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992).  Therefore, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id.* at 56.  For this reason, in *Hinojos*, the Ninth Circuit held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

31.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

32.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

33.     Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."   Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

34. The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id.*

35. The unmistakable inference to be drawn from the foregoing research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendant is intended to, and does in fact, influence customer behavior by artificially inflating customer perceptions of a given item's value and causing customers to spend money that they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising

36. Defendant had the opportunity to follow decades of significant industry guidance from the federal Government for its bargain advertising and comparative price advertising practices. Federal law regulates bargain advertising practices under the general false advertising statutes, 15 U.S.C. §§ 52 and 55, but the Code of Federal Regulations set forth guidelines issued by the Federal Trade Commission ("FTC") that provide detailed descriptions, explanations of what types of advertising may be misleading, and guidance. 16 C.F.R. § 1.5 ("Industry guides are administrative interpretations of laws administered by the [Federal Trade] Commission for the guidance of the public in conducting its affairs in conformity with legal requirements.").

37. For example, the FTC has provided written guidance on former price comparisons in relevant part, "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

*on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where *an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction— the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price*." (16 C.F.R. § 233.1(a) (emphasis added).)

38.     The FTC has also stated, "A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, *for a reasonably substantial period of time, in the recent, regular course of his business*, honestly and in good faith—and, of course, *not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based*." (16 C.F.R. § 233.1(b) (emphasis added).)

39.     The FTC has also stated in addressing the topic of retail price comparisons, "Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which *substantial sales of the article are being made in the area*—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving." (16 C.F.R. § 233.2 (emphasis added).)

40.     Plaintiff seeks damages and, in the alternative, restitution.   Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

41.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's claim under section 17501

(an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the statutory three-month period. (Cal. Bus. & Prof. Code § 17501.) Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under section 17501, while not being able to prove one or more elements of Plaintiff's legal claim under the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*, seeking damages.

42. In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

43. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase either the Product or other products from Defendant again in the future if Plaintiff could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the products, and that its discounts were truthful. But, without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so Plaintiff cannot purchase products that Plaintiff would like to purchase.

## V. CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of all persons similarly situated, and seeks certification of the following class:

> All persons who purchased one or more of Defendant's products from Defendant's Website while in California within the statute of limitations period at a purported discount from a higher reference price.

- 13 -

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

45.     The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

46.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100 members of the Class.

47.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

48.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously.

49.     **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a)      Whether, during the Class Period, Defendant advertised false reference prices of its products offered on its Website.

b)      Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on its Website.

c)      Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500 *et seq.*

d)      Whether Defendant's deceptive pricing scheme using false reference prices violate the CLRA under Civil Code § 1770.

50.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

51.    **Ascertainability.**  Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## VI.     CAUSE OF ACTION
## FIRST CAUSE OF ACTION

### Violation of California's False Advertising Law

### Cal. Bus. & Prof. Code § 17500 *et seq.*

52.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

53.    Section 17500 of the California Business and Professions Code states in relevant part, "It is unlawful for any person, firm, corporation or association, or any employee thereof with *intent directly or indirectly to dispose of* real or *personal property* or to perform services, professional or otherwise, or anything of any nature whatsoever

FIRST AMENDED CLASS ACTION COMPLAINT                                    No. 3:25-cv-01963-AJB-AHG

or *to induce the public to enter into any obligation relating thereto*, *to make or disseminate or cause to be made or disseminated before the public in this state*, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or *any advertising device*, or by public outcry or proclamation, or *in any other manner or means whatever*, *including over the Internet*, *any statement*, concerning that real or *personal property* or those services, professional or otherwise, or *concerning any circumstance or matter of fact connected with the proposed* performance or *disposition thereof*, *which is untrue or misleading*, *and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading*, *or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property* or those services, professional or otherwise, *so advertised at the price stated therein, or as so advertised*." (Cal. Bus. & Prof. Code § 17500) (emphasis added).

54. Section 17501 of the Business and Professions Code provides in relevant part that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." (Cal Bus. & Prof. Code § 17501.)

55. By committing the acts alleged in this operative Complaint, Defendant has violated Business and Professions Code §§ 17500 *et seq*.

56. For example, here, Defendant does not ordinarily sell its products including, but not limited to, the Product at the advertised regular prices. And, the Product was not sold at the higher reference price in the pertinent statutory three-month period prior to Plaintiff's purchase of the Product via the Website and Class members' purchases of Defendant's products via the Website.

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

57. As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money.

## SECOND CAUSE OF ACTION

### Violation of Consumers Legal Remedies Act

### Cal. Civil Code § 1750 *et seq.*

58. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

59. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods or services to any consumer.  (Cal. Civ. Code § 1770(a).)

60. The practices described herein, specifically Defendant's advertising and sale of its products, were intended to result and did result in the sale of such products to the consuming public and violated and continues to violate:  (i) section 1770(a)(9) of the Civil Code by "[a]dvertising goods … with intent not to sell them as advertised"; and (ii) section 1770(a)(13) of the Civil Code by "[m]aking false or misleading statements of fact concerning reasons for, existence of, or, amounts of, price reductions."

61. Plaintiff is an individual who acquired, by purchase, the Product, which is a good, for personal, family, or household purposes.

62. Defendant deceived Plaintiff by advertising the price of the Product in a misleading manner contrary to California statutes including sections 17500 and 17501 of the Business and Professions Code.

63. Defendant made material misrepresentations to deceive Plaintiff and Class members.

64. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and Class members. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and Class members, and depriving Plaintiff and Class members of their rights and money.

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:25-cv-01963-AJB-AHG

65. Defendant knew that the Product's advertising of its price on its Website was misleading and deceptive and the advertising of its other products on its Website was similarly misleading and deceptive.

66. Defendant's advertising of the Product was a material factor in Plaintiff's decision to purchase the Product. Based on Defendant's advertising of the Product, Plaintiff reasonably believed that the reference price of the Product purchased by Plaintiff was genuine. Had Plaintiff known the truth of the matter, *i.e.*, that the reference price of the Product was false or misleading, Plaintiff would not have purchased the Product.

67. Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendant's deceptive, unfair, and unlawful conduct.

68. Punitive damages are also sought herein based upon Defendant's deceptive conduct, which indicates that Defendant is guilty of oppression, fraud, or malice.

69. Prior to the commencement of this action, on June 26, 2025, Plaintiff sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct its advertising and/or provide another appropriate remedy of the violations to the putative Class of California consumers. Such notice expressly notified Defendant that it was "on behalf of a putative class of California consumers." Such notice requested that Defendant "(1) cease and desist from continued false reference pricing; and (2) refund the purchase price of all violative products sold during the class period." The notice was in writing and sent by certified mail, return receipt requested to Defendant at its California mailing address at 110 E. 9th Street, Los Angeles, California because such address is "the place where the transaction occurred" within the meaning of subdivision (a)(2) of section 1782 of the California Civil Code as it is identified as the "location" of Defendant and is the sole address for Defendant identified on its Website's Terms and Conditions (last updated on October 17, 2018) at: https://7forallmankind.com/pages/terms-and-conditions (last visited Sept. 24, 2025).

70. In particular, Defendant's online Terms and Conditions state at the end of such document that Defendant is "located at 110 E. 9th St, Los Angeles, CA 90079."

- 18 -

FIRST AMENDED CLASS ACTION COMPLAINT                          No. 3:25-cv-01963-AJB-AHG

Defendant included such street address in order to comply with a California statute, section 17538 of the California Business and Professions Code, which provides in relevant part, "A vendor conducting business through the Internet or any other electronic means of communication shall do all of the following when the transaction involves a buyer located in this state:  (1) Before accepting any payment or processing any debit or credit charge or funds transfer, the vendor shall disclose to the buyer in writing or by electronic means of communication, such as e-mail or an on-screen notice, the vendor's return and refund policy, the legal name under which the business is conducted, and except as provided in paragraph (3), *the complete street address from which the business is actually conducted*."  (Cal. Bus. & Prof. Code § 17538(d)(1)) (emphasis added).

71.    Plaintiff's envelope containing Plaintiff's pre-filing CLRA demand letter was returned by the United States Postal Service back to Plaintiff's counsel's office stating:

"RETURN TO SENDER

INSUFFICIENT ADDRESS

UNABLE TO FORWARD"

The Postal Service's sticker containing such notation is dated July 3, 2025.

72.    More than 30 days have elapsed since Plaintiff sent such demand letter to Defendant, but Defendant failed to respond by either correcting its advertising and/or otherwise providing an appropriate remedy of the violations or offering to do so within a reasonable time to the entire putative Class.

73.    In addition, Plaintiff filed the original Complaint in this action on July 31, 2025, which provided a specific description of Defendant's wrongdoing in violation of the CLRA, and which alleged a putative class action and defined the putative class as follows:  "**All persons who purchased any product from Defendant's Website while in California within the statute of limitations period at a purported discount from a higher reference price.**"  (Compl. of 7/31/25 ¶ 36; Doc. 1) (emphasis in original). Service of process of the Summons and original Complaint in the instant action was

effectuated on August 20, 2025.  (*See* Doc. 4.)  More than 30 days has elapsed since Plaintiff filed and served such original Complaint upon Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative Class within a reasonable time.[3]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.  For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

b.  For all available legal, equitable, and declaratory relief;

c.  For statutory damages;

d.  For punitive damages;

e.  For attorneys' fees and costs as allowed by law; and

f.  For any and all other relief at law or equity that may be appropriate.

Dated:  September 26, 2025          PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorneys for Plaintiff and the Putative Class

---

[3] Multiple federal district court decisions recognizing the CLRA notice provided via an original complaint for purposes of pleading CLRA damages in an amended complaint. *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (initial complaint's allegations provided CLRA notice for purposes of amended complaint); *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) (same).