UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA SANCHEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>DELTA GALIL USA, INC.,<br><br>                              Defendant. | Case No.:  25-cv-01963-AJB-AHG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>(Doc. No. 9) |

Before the Court is Defendant Delta Galil USA, Inc.'s ("Delta Galil") motion to dismiss. (Doc. No. 9.) Plaintiff Monica Sanchez ("Sanchez") opposes the motion. (Doc. No. 11.) Following the conclusion of the initial briefing, the Court sought supplemental briefing regarding whether the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and 1332(d). (Doc. No. 13.) On January 15, 2026, the Court heard oral argument on the motion. (Doc. No. 18.) The Court authorized the parties to conduct limited discovery and ordered a second round of supplemental briefing. (Doc. No. 20.) The motion is now fully briefed. (Doc. Nos. 9; 11–12; 14–17; 22–24.) Pursuant to Local Rule 7.1.d.1, the Court finds this matter suitable for disposition without further oral argument.

For the reasons set forth below, the Court **GRANTS** Delta Galil's motion to dismiss. (Doc. No. 9.) Sanchez may file a second amended complaint on or before **May 21, 2026**.

## I.    BACKGROUND

### A.    Factual Background

On June 25, 2025, Sanchez purchased a pair of pants from the website https://www.7forallmankind.com for $186. (Doc. No. 7 ¶ 10.) According to Sanchez, Delta Galil operates the website to sell clothing and accessories. (*Id.* ¶¶ 1, 3.) At the time of her purchase, the website indicated that the pants had a "reference price" of $248 and a discounted price of $186. (*Id.* ¶ 10.) Sanchez did not see any disclaimer or notice explaining the reference price "was anything other than the former price or regular price at which [Delta Galil] itself sold [the pants] to consumers." (*Id.* ¶ 12.) Sanchez alleges this reference pricing constitutes a "deceptive pricing scheme" that "induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise they otherwise would have if Defendant was simply being truthful about its 'sales.'" (*Id.* ¶ 28.)

An investigation by Sanchez's counsel, Scott J. Ferrell, indicated that between January 29, 2023, and June 24, 2025—*i.e.*, before Sanchez purchased the pants—Delta Galil regularly advertised the pants with a reference price of $248 and a discounted price of $186. (*Id.* ¶ 14.) However, between June 5, 2022, and October 6, 2022, Delta Galil advertised the pants with a price of $218. (*Id.* ¶ 16.) Additionally, on November 4, 2024, Delta Galil advertised the pants with a reference price of $248 and a discounted price of $136. (*Id.* ¶ 15.)

Mr. Ferrell's investigation also showed that between July 8, 2025, and September 26, 2025—*i.e.*, after Sanchez purchased the pants—Delta Galil continued to advertise the pants with a reference price of $248 and a discounted price of $186. (*Id.* ¶ 17.)

### B.    Procedural Background

On July 31, 2025, Sanchez initiated this Action as a putative class action. (Doc. No. 1.) Sanchez served Delta Galil on August 20, 2025. (Doc. No. 4.) Delta Galil timely moved to dismiss Sanchez's initial complaint. (Doc. No. 5.)

On September 26, 2025, instead of responding to Delta Galil's initial motion to dismiss, Sanchez filed the operative First Amended Complaint ("FAC"). (Doc. No. 7.) The

25-cv-01963-AJB-AHG

FAC identifies two causes of action: (1) a "violation of California's False Advertising Law[,] Cal. Bus. & Prof. Code § 17500 *et seq.*"; and (2) a "violation of Consumers Legal Remedies Act[,] Cal. Civil Code § 1750 *et seq.*" (*Id.* ¶¶ 52–73.)

On October 17, 2025, Delta Galil moved to dismiss the FAC. (Doc. No. 9.) Delta Galil argues that (1) this Court does not possess jurisdiction over this action because Sanchez's status as a tester precluded her from suffering a cognizable Article III injury (Doc. No. 9-1 at 9–10)[1]; (2) venue is not proper in the Southern District of California because Sanchez does not reside in the District and none of the underlying events that gave rise to this action occurred in the District (*id.* at 12–13); and (3) Sanchez fails to state a claim on which relief may be granted (*id.* at 11).

On November 14, 2025, the Court requested that the parties provide supplemental briefing on whether Sanchez has satisfied the amount in controversy requirements established by 28 U.S.C. §§ 1332(a) & (d)(2) in light of *Rosenwald v. Kimberly-Clark Corporation*, 152 F.4th 1167 (9th Cir. 2025). (Doc. No. 13.)

On January 15, 2026, following supplemental briefing, the Court held a motion hearing. (Doc. Nos. 14–18.) Because significant questions remained regarding whether the Court has jurisdiction over this matter, the Court authorized limited discovery on Delta Galil's corporate structure and Sanchez's residence between November 2024 and July 2025. (Doc. No. 20 at 1.) The Court also requested a second round of supplemental briefing. (*Id.*) More supplemental briefs were timely filed. (Doc. Nos. 22–24.)

This Order follows.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Lack of Article III standing requires dismissal for

---

[1]    Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 807 n.9 (9th Cir. 2015).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving such an attack, unlike a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**B.    Federal Rule of Civil Procedure 12(b)(3)**

A party may file a motion to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3). The plaintiff has the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). "In a Rule 12(b)(3) motion, the allegations in the complaint need not be accepted as true and the Court may consider evidence outside the pleadings." *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009). "If the court finds that the case has been filed in the wrong division or district, it must dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Allstar Mktg. Grp., LLC v.*

25-cv-01963-AJB-AHG

*Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (internal citation and quotation omitted).

### C.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

### A.   The Court grants Delta Galil's request for judicial notice.

In conjunction with its motion to dismiss, Delta Galil asks the Court to take judicial notice of nine complaints Sanchez filed in Los Angeles County Superior Court through Mr. Ferrell, three complaints Sanchez filed in San Diego County Superior Court through Mr. Ferrell, and two additional documents filed in one of Sanchez's Los Angeles County Superior Court cases. (Doc. No. 9-2; *see also* Doc. Nos. 9-3–9-16.) Delta Galil asserts the

25-cv-01963-AJB-AHG

Court may judicially notice these documents because "(1) they are offered as evidence of their existence, rather than the truth of any statements contained therein; and (2) they can be accurately verified through court filings and therefore are not subject to reasonable dispute." (Doc. No. 9-2 at 2.) Delta Galil adds that the documents are relevant "because they elucidate [Sanchez's] place of residence as well as her motives in filing false advertising lawsuits." (*Id.*)

Sanchez objects that the documents are not relevant. (Doc. No. 11-3.)

Delta Galil replies that the documents are relevant to two issues raised in its motion to dismiss. "First, [Sanchez's] perception of the accused advertisement, in light of her experience litigating false advertising claims, is relevant to the merits of the claims. Second, [Sanchez's] place of residence at the time that she purchased Defendant's product is relevant to whether venue in this district is proper." (Doc. No. 12-3 at 2.)

Delta Galil is correct.

Federal Rule of Evidence 201(b) authorizes district courts "to notice an adjudicative fact if it is 'not subject to reasonable dispute.' A fact is 'not subject to reasonable dispute' if it is 'generally known,' or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)(1)–(2)).

"Judicial notice of court records is routinely accepted." *Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1014 (S.D. Cal. 2016). However, courts "may not take judicial notice of such documents for the truth of the matter therein." *In re Bare Escentuals, Inc. Secs. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010).

Here, Sanchez alleges that she is "a resident of the County of San Diego who purchased a product . . . from [Delta Galil's] Website while located in the County of San Diego." (Doc. No. 7 ¶ 2.) Sanchez further alleges that she "purchased a Product that [she] would not otherwise have purchased, but for Defendant's representations." (*Id.* ¶ 42.)

On the issue of Sanchez's residence, the federal venue statute does not turn on the place of a plaintiff's residency. *See* 28 U.S.C. § 1391(b). Nevertheless, in an action such as

25-cv-01963-AJB-AHG

this, a plaintiff's place of residence may reveal from where she accessed a defendant's website, and in turn reveal where the acts or events that provide the underlying basis of an action occurred. *See id.* § 1391(b)(2). With regard to Sanchez's state court suits, under California law, a plaintiff's venue choice is not limited to any specific state court when the defendant does not reside within California. *See* Cal. Code Civ. Proc. § 395(a). It is therefore reasonable to think that a plaintiff, like Sanchez, would initiate state court actions in the venue in which she resides as a matter of convenience. Thus, where Sanchez initiated other legal actions in state court may be indicative of her county of residence. In turn, the documents are relevant to Delta Galil's venue defense because they may controvert Sanchez's allegation that she resided in San Diego County at the time of her purchase.

As for Sanchez's motivations, given that Sanchez alleges that she was deceived by Delta Galil's reference-pricing practice, the fact that Sanchez has filed similar actions against other defendants may indicate that Sanchez is familiar with such price practices and could not have been deceived. *See, e.g.*, *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946–47 (S.D. Cal. 2007) (explaining that a plaintiff, "represented by four different law firms, fil[ing] a nationwide lawsuit in four different states a mere eleven days after making her purchase" indicates a "more than purely theoretical" possibility that the plaintiff "did not rely on the allegedly false advertising."). The documents are therefore relevant to Delta Galil's standing defense because they may controvert Sanchez's allegation that she relied on any allegedly deceptive representations. *See id.*

Under these circumstances, the Court takes judicial notice of Sanchez's other court filings. *Mendez*, 219 F. Supp. 3d at 1014. However, the Court does not accept the truth of any facts alleged therein. *In re Bare Escentuals*, 745 F. Supp. 2d at 1067.

Additionally, the Court *sua sponte* takes judicial notice of the civil cover sheet filed by Sanchez through Mr. Ferrell in *Sanchez v. Organifi, LLC*, No. 2:25-cv-04912-SB-MAR (C.D. Cal. May 30, 2025). (*See* Doc. No. 19-1.) During the hearing, Sanchez's counsel confirmed that Sanchez was also the plaintiff in the *Organifi* matter. (Doc. No. 23-2 at 12.) The civil cover sheet indicates that Sanchez resided in San Bernardino County on May 30,

7

2025. (Doc. No. 19-1.) This contradicts Sanchez's declaration that she resided in Carlsbad between November 2024 and July 2025. (*Compare id.*, *with* Doc. No. 11-2 ¶ 3.)

Accordingly, the Court **GRANTS** Delta Galil's request for judicial notice. The Court also takes judicial notice of the civil cover sheet filed in *Sanchez v. Organifi, LLC*, No. 2:25-cv-04912-SB-MAR (C.D. Cal. May 30, 2025).

### B.    Sanchez possesses standing.

Turning to the substance of Delta Galil's motion, Delta Galil contends that Sanchez lacks standing to litigate this action. Specifically, Delta Galil asserts that Sanchez has not suffered an injury-in-fact because she "is a tester plaintiff whose purchase . . . was designed solely for litigation purposes." (Doc. No. 9-1 at 9.) Delta Galil points to Sanchez's other lawsuits in which she self-identifies as a tester to support this contention. (*Id.* (citing Doc. No. 9-14 ¶ 4).) Delta Galil additionally relies on *Cattie*, 504 F. Supp. 2d at 948, to imply that Sanchez "strategically fil[ing] a series of similar false advertising suits across multiple venues" shows that her purchase here "was a 'token purchase' designed to 'deliberately seek out statutory violations.'" (Doc. No. 9-1 at 10.) Delta Galil also points to this Court's prior dismissal of an action where the plaintiff "recently filed [22 other lawsuits] against similar establishments." (*Id.* (citing *Strojnik v. Vill. 1017 Coronado, Inc.*, No. 3:19-cv-02210-BAS-MSB, 2020 WL 3250608 (S.D. Cal. June 16, 2020) (Bashant, J.).)

Delta Galil's standing arguments are unavailing.

"To establish standing, a '[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Here, Delta Galil provides no evidence to establish that Sanchez's purchase "was designed solely for litigation purposes." (Doc. No. 9-1 at 9; *see generally* Doc. No. 9-1.)

Delta Galil's reliance on *Cattie* and *Strojnik* is also unpersuasive. Turning first to *Cattie*, the court there did not rely on the fact that the plaintiff filed multiple suits in other

venues to conclude that the plaintiff's purchase was a token purchase for seeking out statutory violations. Rather, the court dismissed the complaint there because the plaintiff did "not allege that false statements or claims had anything to do with her decision to purchase [a product]." *Cattie*, 504 F. Supp. 2d at 947. Thus, the court's statement that the plaintiff, "represented by four different law firms, filed a nationwide lawsuit in four different states a mere eleven days after making her purchase," *id.* at 946–47, was *dicta*. The court's subsequent discussion of a "token purchase" made "at the direction of attorneys deliberately seek[ing] out statutory violations" addressed the broader issue of whether a plaintiff needed to allege reliance. *Id.* at 948. Under these circumstances, *Cattie* does not support Delta Galil's implication that a tester plaintiff, even a prodigious one, makes purchases solely for litigation purposes.

As for *Strojnik*, the Court took judicial notice of the plaintiff's slew of lawsuits to test the credibility of whether a plaintiff who lives in Phoenix, AZ, would actually "visit over twenty different [lodging] establishments" in San Diego. 2020 WL 3250608, at *3. The Court emphasized that "a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). Applying this framework, the Court rejected the plaintiff's allegation that he "plans to return to [Village 1017 Coronado, Inc.'s] lodging establishment" in the future because "[i]t defies credulity that [the] [p]laintiff intends to visit over twenty different [lodging] establishments in San Diego when he lives in Phoenix." *Id.* Here, the mere fact that Sanchez has filed multiple, similar suits does not mean that Sanchez could not have relied on Delta Galil's allegedly deceptive representations regarding its product's price. Nor is it facially implausible that Sanchez would have relied on similar representations from multiple retailers or that Sanchez later learned she might have been deceived by all of those representations.

Furthermore, Sanchez has plausibly alleged that she relied on Delta Galil's allegedly deceptive pricing practice. Again, Sanchez alleged that she "purchased a Product that [she] would not otherwise have purchased, but for Defendant's representations." (Doc. No. 7

25-cv-01963-AJB-AHG

¶ 42.) The fact that Sanchez is familiar with deceptive reference pricing schemes, as evidenced by her past litigation, does not necessarily preclude Sanchez from relying on Delta Galil's representations here. *See, e.g.*, *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG-JCx, 2018 WL 6714323, at * 2 (C.D. Cal. Oct. 17, 2018). Such familiarity simply means that Sanchez "may have *suspected*" that Delta Galil was engaged in such practices before buying the pants. *Id.* It does not mean that Sanchez "*knew for certain*" that Delta Galil was engaged in a deceptive pricing scheme before she purchased the pants. *Id.*

Thus, Sanchez has plausibly alleged that she suffered an injury-in-fact that is traceable to Delta Galil's allegedly unlawful conduct. In turn, the Court finds that Sanchez has Article III standing to pursue her claims.[2]

### C.   Venue is proper in this Court.

Delta Galil also asserts that the Southern District of California is not a proper venue for this action, arguing primarily that Sanchez does not reside within this District. (Doc. Nos. 9-1 at 12–13; 12 at 8–10.)

Pursuant to 28 U.S.C. § 1391(b), venue is proper in:

(1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that the subject of the action is situated; or

(3)   if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Court is persuaded that venue is proper in this District.

Again, a plaintiff's residence is not determinative of the proper federal venue. *See* 28 U.S.C. § 1391(b). Although Delta Galil devotes many pixels to arguing that Sanchez does not reside within the Southern District of California, it limits its argument that the

---

[2]   Delta Galil does not argue that Sanchez's alleged injury is not redressable by a favorable court decision. (*See generally* Doc. Nos. 9; 12; 16; 23.)

underlying events did not occur here to half of a heading. (*Compare* Doc. Nos. 9-1 at 12–13; 12 at 8–10; 23 at 7–9 (addressing residence), *with* Doc. No. 9-1 at 12 ("Venue is improper because . . . no events occurred in this [D]istrict.").)

However, the allegations and evidence indicate all relevant underlying events occurred in this district. The FAC alleges that Sanchez made her purchase "while located in the County of San Diego," and so "venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District." (Doc. No. 7 ¶¶ 2, 7.) Additionally, Sanchez offers a declaration signed under penalty of perjury to declare that "At all times that I used and navigated the [https://www.7forallmankind.com] Website, I was located in the County of San Diego." (Doc. No. 11-2 ¶ 3.) Sanchez adds that she used a San Marcos, CA billing address and a Carlsbad, CA shipping address. (*Id.* ¶¶ 4–5.) Delta Galil has also provided Sanchez's order confirmation email, which corroborates Sanchez's declaration that she used a San Marcos billing address and a Carlsbad shipping address. (Doc. No. 12-2.) Both San Marcos and Carlsbad are located in San Diego County, which is located within the Southern District of California.[3]

Under these circumstances, the evidence before the Court indicates that all underlying activities occurred within the Southern District of California. The Court consequently finds that venue is proper in this District.[4]

---

[3] The locations of San Marcos, CA; Carlsbad, CA; and San Diego County are facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Jurisdiction Map of the United States District Court Southern District of California, U.S. District Court for the Southern District of California, https://www.casd.uscourts.gov/_images/jurisdiction-map.png; City Web Sites in San Diego County, San Diego County Department of Public Works, https://www.sandiegocounty.gov/content/sdc/dpw/citylinks.html. The Court judicially notices these facts *sua sponte*. Fed. R. Evid. 201(c)(1).

[4] Although the Court finds that venue is proper in this District, Delta Galil's concerns regarding Sanchez's pleading practices warrant pause.

As noted above, Sanchez and her counsel have made contradictory statements regarding Sanchez's county of residence. (*Compare* Doc. No. 11-2 ¶ 3, *with* Doc. No. 19-1.) At the hearing, Sanchez's counsel did not offer an explanation for this inconsistency. (*See* Doc. No. 23-2 at 12–13.)

**D.    Sanchez has stated claims on which relief can be granted.**

Delta Galil next claims that Sanchez has failed to state a claim on which relief can be granted because (1) her "claims are based on a token purchase made solely for purposes of filing suit" and (2) Sanchez's "allegations are implausible and inconsistent with the prior pleading." (Doc. No. 9-1 at 9–11.)

These objections are meritless.

First, as previously noted, Delta Galil does not offer any evidence to show that Sanchez purchased the pants solely for litigation purposes. Instead, Sanchez has plausibly alleged that she relied on Delta Galil's purportedly deceptive pricing practice. (*Supra* at 8–10.)

Second, Sanchez's allegations in the FAC are plausible and sufficient.

Focusing on the allegations contained in the FAC, Delta Galil asserts the Court should reject the allegations therein because, "[i]n light of attorney Ferrell's known practice of filing 'cookie cutter' complaints, the new allegations are suspect and implausible on their face and should be disregarded." (Doc. No. 9-1 at 11 (citing *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060 (C.D. Cal. 2023)).)

---

This is not the first time that this Court has discovered inconsistencies in filings signed by Sanchez's counsel in this District and the Central District of California. *See, e.g.*, Order to Show Cause, *Esparza v. Express Scripts Pharm., Inc.*, No. 3:25-cv-01988-AJB-DDL (S.D. Cal. Sept. 27, 2025), Doc. No. 3; Order to Show Cause, *Rodriguez v. Blaze Pizza, LLC*, No. 3:25-cv-01850-AJB-DEB (S.D. Cal. Sept. 23, 2025), Doc. No. 8. Mr. Ferrell previously explained that these inconsistencies occurred because his office "inadvertently indicated [an incorrect] county of residence." Plaintiff's Suppl. Br. in Response to Order to Show Cause at 2, *Rodriguez v. Blaze Pizza, LLC*, No. 3:25-cv-01850-AJB-DEB (S.D. Cal. Oct. 7, 2025), Doc. No. 11; *see also* Plaintiff's Supp. Br. in Response to Order to Show Cause at 2, *Esparza v. Express Scripts Pharm., Inc.*, No. 3:25-cv-01988-AJB-DDL (S.D. Cal. Oct. 7, 2025), Doc. No. 11 (similar).

The Court reminds counsel that they are responsible for the contents of the documents that they file. By signing and filing such documents, counsel "certify[y] that to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The Court stresses that violations of Rule 11(b) may be sanctioned. Fed. R. Civ. P. 11(c).

However, Delta Galil's reliance on *Byars* is misplaced. Rather than addressing the credibility or plausibility of the allegations in a complaint, the cited portion of *Byars* was critical of whether a complaint's allegations are sufficiently specific:

> if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered 'introduction' section . . . ), then almost by definition the pleading is without the factual specificity necessary to state a claim for relief.

656 F. Supp. 3d at 1059–61. Under these circumstances, the fact that Sanchez and her counsel may rely on cookie cutter complaints does not necessarily undermine the plausibility of the allegations contained in the FAC. *Id.*

In any event, the allegations in the FAC are sufficiently tailored to state a claim on which relief can be granted. Preliminarily, the Court notes that it is indisputable that the bulk of the FAC can be "cop[ied] and paste[d] . . . word-for-word against a new defendant." *Id.* For instance, the FAC's use of defined terms like "Product" and "Website" allows Sanchez and her counsel to use much of the same language as a template across multiple actions. (*See, e.g.*, Doc. No. 7 ¶ 14 ("In particular, Defendant was offering the exact same Product on the Website for an allegedly discounted price of [$] with the same phantom discount from a strike-through reference price of [$].").) Additionally, the FAC references screen captures that are archived on the Wayback Machine, as well as price histories tracked by Klarna.com. (*See id.* ¶¶ 14–16, 19, 21–22.) Yet the FAC does not include any hyperlinks to specific screen captures or Klarna.com tracking. (*See id.*)

Nevertheless, the FAC's inclusion of 30 specific dates and identification of the prices Delta Galil allegedly charged for the pants Sanchez purchased on those dates is sufficient to prevent copying and pasting the complaint in its entirety. (*See, e.g., id.* ¶¶ 14–22.) It also provides sufficient specificity to state a claim for relief. *See Byars*, 656 F. Supp. 3d at 1059–61.

13

**E.      The Court lacks jurisdiction over Sanchez's claims.**

Lastly, Delta Galil argues that the Court lacks subject matter jurisdiction over Sanchez's claims because Sanchez has failed to plausibly plead an amount in controversy that meets either 28 U.S.C. § 1332(a)'s $75,000 threshold or the Class Action Fairness Act's $5 million threshold. (Doc. Nos. 16 at 2–6; 23 at 2–7.)

Delta Galil is correct.

### 1.      The Court lacks diversity jurisdiction.

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). To exercise diversity jurisdiction, there must be "complete diversity—no plaintiff may be from the same state as any defendant." *Rosenwald*, 152 F.4th at 1174.

### a.      Amount in Controversy

Beginning with the amount in controversy requirement, the amount in controversy "claimed by the plaintiff controls . . . [unless] [i]t . . . appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). A court is "obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 671 (9th Cir. 2021) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

In her supplemental brief, Sanchez offers two bases by which to satisfy the amount in controversy requirement for her individual claim: (1) "the Court should not calculate attorneys' fees on a pro rata basis for purposes of diversity jurisdiction if a putative class action is no longer at issue" and (2) "Plaintiff anticipates . . . that the cost of modifying [the] Website to remove its extensive use of strike-through reference pricing and/or implement a new policy and/or procedure to comply with applicable law would, combined together with Plaintiff's future attorneys' fees, exceed $75,000." (Doc. No. 14 at 8.)

25-cv-01963-AJB-AHG

Neither of these bases is persuasive. Sanchez's first assertion that "the Court should not calculate attorneys' fees on a pro rata basis for purposes of diversity jurisdiction" tacitly concedes that Sanchez's present individual claim cannot reach the $75,000 threshold. (Doc. No. 14 at 8.) Moreover, *Rosenwald* makes clear that the Court is prohibited from taking Sanchez's requested aggregation approach. 152 F.4th at 1180. Accordingly, Sanchez must plausibly allege that she could individually recover more than $75,000. *Id.* at 1178.

She does not. Sanchez's supplemental briefing makes no effort to provide a breakdown of her anticipated individual actual damages, punitive damages, or attorney fees. (*See generally* Doc. Nos. 14; 17; 22; 24.)

Setting aside this shortcoming, *Rosenwald* and additional evidence confirm that Sanchez cannot meet the $75,000 threshold.

First, *Rosenwald* stated that a plaintiff's actual damages will likely be less than the price she paid for a particular product because "no plaintiff can recover '[a] full refund' unless they 'prove the product had *no* value to them.'" 152 F.4th at 1178 (quoting *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015)). Despite this burden, Sanchez does not demonstrate that the pants she purchased had no value to her. (*See generally* Doc. Nos. 7; 11; 14; 17; 24.) To the contrary, Sanchez's arguments illustrate that she received some benefit from the pants because she "successfully accomplished" her goal of "look[ing] for women's pants to purchase for [her] to personally wear as [Sanchez is] a woman." (Doc. No. 11-2 ¶ 7.) Instead, Sanchez offers that she and the other class members would be entitled to a full refund under a "complete restitution" model. (Doc. No. 17 at 2–3; *see also* Doc. No. 24 at 6–11.)

This is incorrect.

In light of Sanchez's acknowledgment that she received some benefit from her purchase, she has already received some unquantified value from her purchase. If Sanchez has worn or used the pants in any way, that unquantified value would increase. Authorizing a full refund after the purchase has been used or enjoyed would allow Sanchez (and the putative class members) "to retain some . . . boon [and] obtain the windfall of a full refund

15

and profit from a restitutionary award." *In re POM Wonderful LLC*, No. ML 10-02199-DDP-RZx, 2014 WL 1225184 at *3 (C.D. Cal. Mar. 25, 2014).[5] In such a case, allowing a full refund as restitution would go beyond restitution's purpose of "restor[ing] the defrauded party to the position [s]he would have had absent the fraud." *Nelson v. Serwold*, 687 F.2d 278, 281 (9th Cir. 1982) (citation omitted). Sanchez fails to grapple with this purpose and its attendant limitations on any potential remedy. (*See* Doc. Nos. 14 at 6–7; 17 at 2–3; 24 at 6–11.)

Thus, Sanchez is not entitled to a full refund, even in the form of restitution, and her actual or compensatory damages would likely be less than the $186 she paid for the pants. (*See* Doc. No. 7 ¶ 10.)

Additionally, Sanchez's punitive damages would likely be capped below $744. This is because "an award of more than four times the amount of compensatory damages [will] be close to the line of constitutional impropriety." *Rosenwald*, 152 F.4th at 1179 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).

Against this backdrop, Sanchez has to show that she would be entitled to more than $74,070 in attorney fees to satisfy 28 U.S.C. § 1332(a)(1)'s threshold. Sanchez makes no effort to do so. (*See generally* Doc. Nos. 14; 17; 22; 24.)

In contrast, Delta Galil offers that the highest *pro rata* share of attorney fees any individual plaintiff can claim is $4,950. (Doc. No. 16 at 5.) To reach this number, Delta Galil explains that "between August 1, 2022 and July 31, 2025 (the three years prior to this suit)," the website sold $5.95 million-worth of strikethrough-discounted products to

---

[5] Sanchez's suggestion that this principle should be limited to cases involving food products is illogical. (*See* Doc. No. 24 at 7n.1, 9–10.) The use of a physical product converts it from a "new" to a "used" condition. Moreover, when the product at issue is an article of clothing, as is the case here, such use can cause wear and tear that further affects the product's condition. This is compounded by the possibility that some of the clothing items may have been purchased—and used for—up to four years before this Action was filed.

25-cv-01963-AJB-AHG

California consumers. (*Id.* at 2–3 (citing Doc. No. 16-1 ¶¶ 2–3).)[6] Because Sanchez has not shown that products purchased had no value to the buyers, Delta Galil posits that the putative class members are only entitled to a 33.33% refund because that is the average strikethrough discount. (Doc. No. 16 at 4.) Thus, Delta Galil calculates the total refundable amount to be $1.98 million. (*Id.*) Applying Sanchez's proposed 25% benchmark for attorney fees (Doc. No. 14 at 3–5), Delta Galil concludes that the class would be entitled to $495,000 in fees. (Doc. No. 16 at 2–5.) Assuming a class of exactly 100 members, this would mean that each member is entitled to a maximum of $4,950 in fees. (*Id.*) This award would, of course, be reduced by each additional putative class member.

Sanchez's attempts to increase the total refundable amount does not move the needle by any meaningful degree. Sanchez argues that the relevant time frame that should be captured is four years prior to the initiation of this action because California's Unfair Competition Law provides for a four-year statute of limitations. (Doc. No. 17 at 2 n.1.) Sanchez thus contends the amount in controversy should be based on an extrapolated total of $7.9 million worth of strikethrough-discounted products sold to California consumers. (*Id.* at 2.) Applying the 33.33% refund rate[7] to the $7.9 million figure, the total refundable amount would increase to $2,633,333.33. Using the 25% benchmark for attorney fees produces a total of $658,333.33 in attorney fees for the class, or $6,583.33 per individual.

Using these figures, Sanchez is entitled to a maximum of $7,513.33 in damages and fees. This falls far short of the $75,000 threshold.

Second, considering Delta Galil's costs to revise the website does not help Sanchez across the threshold. Sanchez cites a single case to support the idea that the Court should

---

[6]    Sanchez proposes that the putative class consist of "All persons who purchased one or more of Defendant's products from Defendant's Website while in California within the statute of limitations period at a purported discount from a higher reference price." (Doc. No. 7 ¶ 44.)

[7]    Sanchez's sole argument for a higher refund rate is that the class members are entitled to a full refund. (*See* Doc. Nos. 17 at 2–3; 24 at 6–11.) This argument is unavailing. *Rosenwald*, 152 F.4th 1178–79; *In re POM Wonderful*, 2014 WL 1225184 at *3. Accordingly, the Court applies Delta Galil's 33.33% refund rate.

consider such costs in calculating the amount in controversy: *Garcia v. TH Foods, Inc.*, 2:24-cv-08558-SVW-JPR, 2025 WL 395456 (C.D. Cal. Jan. 7, 2025). (Doc. No. 14 at 7–8.) But *Garcia* indicates that any revision costs here would not bring the amount in controversy across the $75,000 threshold. In *Garcia*, the plaintiff sued a cracker manufacturer for allegedly unlawful "slack fill." 2025 WL 395456, at *1. The manufacturer offered evidence that designing and using new product packaging would cost over $200,000. *Id.* at *2. The *Garcia* court discounted the costs of the manufacturer designing new packaging because the manufacturer "would bear [such] costs whether or not it made new packaging," but agreed that the cost of using new packaging would exceed $75,000. *Id.*

Here, any costs for revising the website would likely be negligible and a non-factor. Although Sanchez does not offer any evidence on this point, Delta Galil provides a declaration that modifying the website would cost "a minimal amount of time and money." (Doc. No. 16-1 ¶ 6.) Delta Galil asserts that changing the website's prices "would take a few clicks of a button and would entail only minimal personnel cost." (Doc. No. 16 at 5.) Notably, these costs would be based on directing "[a]lready-salaried personnel . . . to click a few buttons and remove the incompliant strikethrough discounts from the website." (*Id.* at 6 (citing Doc. No. 16-1 ¶ 6).) Because Delta Galil "would bear [these salary] costs whether or not it [modifies the website]," the Court declines to consider such compliance costs as part of calculating the amount in controversy. *Garcia*, 2025 WL 395456, at *2.

In turn, these negligible compliance costs do not bring Sanchez's individual claim of up to $7,513.33 in damages and fees past the $75,000 threshold.

### b.    Complete diversity

Although Sanchez has failed to establish that she can satisfy the amount in controversy requirement, it appears that the complete diversity requirement is met. In the FAC, Sanchez alleges that she is a citizen of California and that Delta Galil is a Delaware corporation with a principal place of business in New Jersey. (Doc. No. 7 ¶¶ 2–3.) Delta

18

25-cv-01963-AJB-AHG

Galil does not dispute these allegations. (*See generally* Doc. No. 9-1.) Thus, the Court finds that the complete diversity requirement is met at this time.[8]

### 2. The Court lacks Class Action Fairness Act jurisdiction.

"The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). To determine the amount in controversy for such a claim, "the claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6).

### a. Amount in Controversy

Sanchez fails to demonstrate that the putative class can satisfy the Class Action Fairness Act's $5 million amount in controversy.

In her supplemental briefing, Sanchez contends that the total amount in controversy for the putative class's claims exceeds $5 million. (Doc. No. 14 at 6.) To reach this conclusion, Sanchez assumes that the putative class members would be entitled to complete

---

[8]   Although the Court finds that the complete diversity requirement is met, the evidence before the Court raises significant concerns regarding whether all necessary parties have been joined to this litigation.

The Court previously discovered that a company named "Seven For All Mankind, LLC" is affiliated with Delta Galil and may have a role in controlling the website at issue. (*See* Doc. No. 20 at 2–3.) The Court accordingly authorized discovery on, among other things, the relationship between Delta Galil and Seven For All Mankind, LLC. (*Id.*) The parties apparently agree that Seven For All Mankind, LLC is not a necessary party. (*See* Doc. No. 22 at 3; *see also* Doc. No. 23.)

Nevertheless, the parties' discovery efforts have revealed that another entity named "DG Premium Brands LLC" may be a necessary party. DG Premium Brands LLC "is a wholly-owned subsidiary" of Delta Galil. (Doc. No. 22-2 at 41–42.) It "administrates" the website at issue and has at least some "control over the pricing listed on the website." (*Id.* at 42.) It also employs Bill Elliott, who provided the declaration for Delta Galil that identifies the total value of the website's California transactions and how much it would cost to remove strikethrough pricing from the website. (*Id.* at 43–44; *see also* Doc. No. 16-1.)

Sanchez contends that DG Premium Brands LLC is not a necessary party to this action. (Doc. No. 22 at 3–4). Delta Galil does not respond to or dispute this contention. (*See generally* Doc. No. 23.)

Since the Court lacks subject matter jurisdiction over this matter for other reasons, the Court will not endeavor to resolve whether DG Premium Brands LLC is a necessary party at this time.

25-cv-01963-AJB-AHG

refunds (or restitution) and could seek attorney fees in addition. (*See* Doc. Nos. 14 at 6–7; 17 at 2–3; 24 at 6–11.)

This is incorrect.

As with her individual claims, Sanchez offers no proof that the products purchased by the other putative class members had no value to them. (*See generally* Doc. Nos. 14 at 6–7; 17 at 2–3; 24 at 6–11.) Instead, Sanchez focuses on whether the class members could seek "complete restitution." (Doc. Nos. 14 at 6–7; 17 at 2–3; 24 at 6–11.) As previously discussed, however, the putative class members are not entitled to complete refunds, even in the form of restitution. (*Supra* at 14–18.)

Assuming that Sanchez and the putative class members *may* be entitled to *some* remedy, the question of how to calculate or quantify that remedy remains. Taking Delta Galil's concession that the putative class members could be entitled to a 33.33% refund rate (Doc. No. 16 at 4) and Sanchez's calculation that Delta Galil has sold $7.9 million in goods to California consumers in a four-year period (Doc. No 17 at 2), the maximum total refundable amount appears to be $2,633,333.33. A 25% benchmark attorney fee (*see* Doc. No. 14 at 3–5) would accordingly be $658,333.33. Adding these two numbers produces a total amount in controversy of $3,291,666.66.

This falls short of the Class Action Fairness Act's $5 million threshold. *See* 28 U.S.C. § 1332(d)(2).

### b.    Minimum diversity

"Unlike the complete diversity of citizenship generally required by [28 U.S.C.] § 1332(a) . . . , [the Class Action Fairness Act] requires only 'minimal diversity.'" *Ehrman v. Cox Comms., Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) (citing *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005)). Minimal diversity is present when any plaintiff is a citizen of a state different from any defendant. *Id.* (quoting 28 U.S.C. § 1332(d)(2)(A)).

Here, because there appears to be complete diversity between Sanchez and Delta Galil, there also appears to be minimal diversity. *See Rosenwald*, 152 F.4th at 1177.

* * *

25-cv-01963-AJB-AHG

In sum, the evidence before the Court shows that complete and minimal diversity is present for Sanchez's claims. However, the maximum amount in controversy for Sanchez's personal claim appears to be $7,513.33, which falls well below 28 U.S.C. § 1332(a)'s $75,000 threshold. Similarly, the maximum amount in controversy for the putative class's claims appears to be $3,291,666.66, which does not meet 28 U.S.C. § 1332(d)(2)'s $5 million threshold. The Court accordingly lacks subject matter jurisdiction of these claims.

**F.  The Court grants Sanchez leave to amend.**

Sanchez seeks leave to amend her FAC if the Court grants Delta Galil's motion to dismiss. (Doc. No. 11 at 27.) Generally speaking, courts "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds that granting Sanchez leave to amend her FAC is appropriate. Sanchez may file a second amended complaint on or before **May 21, 2026**.

## IV.  CONCLUSION

For the foregoing reasons, Delta Galil's request for judicial notice and motion to dismiss are **GRANTED**. (Doc. No. 9.) The hearing set for May 28, 2026, at 2:00 p.m. is **VACATED**.

Sanchez may file a second amended complaint on or before **May 21, 2026**. Pursuant to Local Civil Rule 15.1.c, any amendment "must be accompanied by a version of [the FAC] that shows – through redlining, underlining, strikeouts, or other similarly effective typographic methods – how that pleading differs from the [FAC]."

**IT IS SO ORDERED**.

Dated:  May 7, 2026

Hon. Anthony J. Battaglia
United States District Judge

21

25-cv-01963-AJB-AHG